LINDSAY, Judge.
The defendant, Georgia Casualty & Surety Company (Georgia Casualty), has appealed a decision by the trial court granting a motion for partial summary judgment in favor of the plaintiff, Ark-La-Tex Timber Company, Inc., (Ark-La-Tex Timber), in which the trial court held that the defendant-insurer had a duty to defend the plaintiff in a Texas lawsuit. For the following reasons, we reverse the trial court judgment and remand for further proceedings.
BACKGROUND FACTS
The plaintiff is a Louisiana corporation domiciled in Bossier Parish and is engaged in the business of buying and cutting standing timber in Arkansas, Texas and Louisiana. The plaintiff purchased a liability insurance policy from Georgia Casualty through Craig Leach, an agent for Morris, Temple & Company. The local agency was domiciled in Louisiana and the policy was delivered in Louisiana. The effective date of the policy was December 14, 1981. The policy contemplated logging operations in Arkansas, Texas and Louisiana, and it contained certain coverage exclusions applicable to Arkansas and Texas.
On May 16, 1983, suit was filed in Harrison County, Texas by J. Lloyd Woods against the present plaintiff, Ark-La-Tex Timber, Inc., for wrongful removal of tim *1218 ber from his property. Woods alleged that Ark-La-Tex Timber came onto his property and wrongfully removed timber from his land.
Ark-La-Tex Timber called upon Georgia Casualty to defend the action, claiming that, under the terms of the policy, Georgia Casualty had a duty to defend all damage claims arising from its logging operations.
Georgia Casualty investigated the claim and found no duty existed to defend the Texas lawsuit. This finding was based upon two provisions of the policy.
First, the policy contained a coverage exclusion applicable in Texas whereby the plaintiff was not covered for property damage in Texas resulting from cutting timber while inadvertently crossing property lines.
Second, the policy defines an occurrence as “an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured.” Under Texas law, this clause is interpreted to mean that intentional actions are not “occurrences” under the policy definition and are excluded from policy coverage, even when the result of the action is unexpected or unintended. For these two reasons, Georgia Casualty refused to defend.
The plaintiff was required to employ its own counsel in Texas for the defense of the lawsuit. The plaintiff settled the Texas lawsuit for $15,000, but in the process, incurred expenses and attorney fees total-ling $7,311.90.
The plaintiff filed suit in Louisiana against Georgia Casualty for $22,311.90 in damages, claiming reimbursement of the amounts paid in resolving the jawsuit, and for wrongful refusal to defend the lawsuit. The plaintiff also named as defendants, Craig Leach, his employers, Millard Morris and Audrey Temple and CMH, Inc., d/b/a Morris, Temple & Company.
Georgia Casualty answered the suit and contended that under the policy there was no duty to defend the Texas lawsuit. The plaintiff later filed a motion for partial summary judgment against Georgia Casualty, claiming there was no genuine issue of material fact regarding Georgia Casualty’s duty to defend the Texas lawsuit and therefore, Georgia Casualty was liable for the $7,311.90 incurred by the plaintiff in defense of that suit. Other elements of damages claimed by the plaintiff against Georgia Casualty and against the other defendants were not included in this motion for partial summary judgment.
The trial court granted plaintiffs motion for partial summary judgment, ordering Georgia Casualty to pay to the plaintiffs $7,311.90, plus interest.
In written reasons for judgment, the trial court found that, under LSA-C.C. Art. 10, and because the insurance contract was executed in Louisiana, the law of Louisiana governed the issue of whether the defendant owed a duty to defend the Texas lawsuit. The court then reasoned that, under Louisiana law, the obligation to defend is generally to be broadly construed and the existence of the duty to defend is be determined by the allegations in the petition. If, under the allegations of the petition, coverage is not unambiguously excluded, then the duty to defend exists.
The trial court then analyzed the Texas petition and found that it was ambiguous as to whether the actions complained of were intentional or negligent and, since the petition did not unambiguously exclude coverage under the terms of the insurance policy, Georgia Casualty had a duty to defend. On that basis, the motion for partial summary judgment was granted.
Georgia Casualty filed a motion for new trial which was denied by the trial court. Georgia Casualty then suspensively appealed the trial court judgment.
In its appeal, Georgia Casualty claims that the contract of insurance was intended to have effect not only in Louisiana, but also in Arkansas and Texas, and since the situs of the facts giving rise to the Texas lawsuit occurred in Texas, the duty to defend the lawsuit in Texas must be determined according to Texas law. Therefore, Georgia Casualty argues that the trial court was not correct in applying Louisiana law to determine the duty to defend the *1219 lawsuit in Texas and that the granting of the motion for partial summary judgment constituted error.
• Finding that there are disputed issues of material fact and that the plaintiff was not entitled to judgment as a matter of law, the judgment of the trial court granting plaintiffs motion for partial summary judgment must be reversed and set aside.
MOTION FOR PARTIAL SUMMARY JUDGMENT
Motions for summary judgment are regulated by LSA-C.C.P. Art. 966, which provides that the judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law.
The heavy burden of proof in a motion for summary judgment is on the mover to establish that there are no genuine issues of material fact. Only when reasonable minds must inevitably concur is a summary judgment warranted and any doubt should be resolved in favor of a trial on the merits. Swindle v. Haughton Wood Company, Inc., 458 So.2d 992 (La.App. 2d Cir.1984) and cases cited therein.
As stated in Swindle v. Haughton Wood Company, Inc., supra,
A fact is material if its existence or nonexistence may be essential to plaintiff’s cause of action under the applicable theory of recovery. Facts are “material” if they essentially insure or preclude recovery, affect the litigants ultimate success or determine the outcome of a legal dispute.
As we will demonstrate hereafter, the question of which state’s law is applicable to the case constitutes a genuine issue of material fact. Hobbs v. Fireman’s Fund American Insurance Companies, 293 So. 2d 608 (La.App. 3rd Cir.1974), writ denied 296 So.2d 832 (La.1974).
The contract of insurance between the plaintiff and defendant contained an exclusion of coverage for certain hazards. Under the terms of the exclusion clause, coverage was not intended to apply to damage due to the cutting of timber while inadvertently crossing property lines in the states of Arkansas and Texas. However, there is coverage in the state of Louisiana when property damage allegedly occurs due to cutting timber while inadvertently crossing property lines (although there is a $1,000 deductible per claim).
In the present case, the trial court concluded that, under Louisiana law, there was no question but that the defendant insurance company owed a duty to defend the Texas lawsuit. The court also determined that Louisiana law was applicable by virtue of the provisions of LSA-C.C. Art. 10. The trial court cited LSA-C.C. Art. 10 for the proposition that, in a Texas lawsuit involving conduct in Texas between a Texas resident and a Louisiana corporation with a contract of insurance containing specific provisions regarding coverage in Texas, Louisiana law was applicable to determine the defendant’s duty to defend.
In resolving the issue of the duty to defend, we do not find that the choice of Louisiana law is as clear cut as the trial court found it to be. The question of choice of laws to be applied involves, among other tests, a determination of the intent of the parties when forming the contract of insurance, as to which state’s law is applicable in the interpretation of the policy. This question involves factual issues and determinations to be made by the trial court that cannot be resolved on a motion for summary judgment. These issues create genuine issues of material fact and make it difficult to demonstrate that the plaintiff is entitled to judgment as a matter of law.
CHOICE OF LAW
The basic issue in this case is the correct interpretation of LSA-C.C. Art. 10 to resolve conflicts of law involving contracts. More specifically, resolution of the case centers on the correct interpretation of the words in the Article, “where such acts are to have effect.”
*1220 LSA-CC. Art. 10 provides in pertinent part:
The form and effect of public and private written instruments are governed by the laws and usages of the places where they are passed or executed.
But the effect of acts passed in one country to have effect in another country, is regulated by the law of the country where such acts are to have ef-fect_ (Emphasis supplied.)
The trial court in the present case examined LSA-C.C. Art. 10 and then stated,
The insurance contract issued to plaintiff by Georgia Casualty & Surety Company was passed or executed in Louisiana, and it was intended to cover certain logging operations of Ark-La-Tex Timber Company in Louisiana, Arkansas and Texas. There were certain limitations to the coverage of operations in Texas and Arkansas. Georgia Casualty & Surety Company contends that the policy was intended to have effect in another country as provided by Article 10, but this court finds that the policy was intended to have effect in the state of Louisiana.... In this case, this court finds that the laws of Louisiana should govern the insurance contract.
The meaning and application of LSA-C. C. Art. 10 has been the subject of judicial interpretation and scholarly comment over the years. Commentators on the subject have differed on the proper interpretation of LSA-C.C. Art. 10 in resolving conflicts of law problems. There are three theories which may be used in resolving conflicts of law in the interpretation and effect of contracts. First, the law of the place where the contract was completed may govern. Second, the law of the place where the obligation is to be performed may govern. Third, the intent of the parties regarding the law applicable to the contract may govern.
Early cases dealing with conflicts of law questions applied the rule of lex loci con-tractus in determining the law applicable to a contract. Said another way, the law of the place where the contract of insurance was completed governed the interpretation of the insurance contract; the contract was considered completed at the place where the policy was delivered and the first premium paid. Harmon v. Lumbermens Mutual Insurance Company, 164 So.2d 397 (La.App. 2d Cir.1964), writ granted on other grounds, 165 So.2d 487 (La.1964); Deane v. McGee, 261 La. 686, 260 So.2d 669 (1972).
Another view is that the principal of lex loci solutionis should govern; that is, the fulfillment or performance is the very essence of the obligation and thus the place of performance must be considered to be the seat of the contract for resolving choice of laws problems. Conflict of Laws in Louisiana: Contracts, 38 Tulane L.Rev. 726 (1964).
A third view is that the words “where such acts are to have effect” in LSA-C.C. Art. 10, are to be construed to mean that the intent of the parties governs the choice of substantive law. In the absence of express or implied indication of the intent of the parties, their preference of controlling law is to be inferred by deciding which state has the most significant contacts with the parties’ contractual relationship. Conflict of Laws: Contracts, 35 La.L.Rev. 112 (1974).
Relatively recent jurisprudence has adopted the interest analysis approach in determining the choice of laws to apply in the interpretation of contracts. The law of the place with the greatest interest in the contract and its effect will be applied. Jagers v. Royal Indemnity Company, 276 So.2d 309 (La.1973); Snider v. Murray, 461 So.2d 1051 (La.1985); Bloodworth v. Carroll, 463 So.2d 1313 (La.1985); Sutton v. Langley, 330 So.2d 321 (La.App. 2d Cir. 1976), writs denied 332 So.2d 805, 820, 333 So.2d 242 (1976); Succession of Dunham, 393 So.2d 438 (La.App. 1st Cir.1980), writ granted 397 So.2d 802 (La.1981), modified on other grounds 408 So.2d 888 (La.1981).
In determining the choice of laws to be applied to the interpretation of a contract, interest analysis and LSA-C.C. Art. 10 are not in conflict. The contract is “to have effect” in Louisiana, and Louisiana law is to be applied, only when Louisiana has a sufficient interest in the application of its *1221 law. Conflict of Laws: Insurance, 47 La. L.Rev. 1213 (1987).
Jagers, supra, in citing from Restatement Second, Conflict of Laws § 6 (1969), indicated the following factors may be used in conducting an interest analysis:
(1) A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law,
(2) When there is no such directive, the factors relevant to the choice of the applicable rule of law include
(a) the needs of the interstate and international systems,
(b) the relevant policies of the forum,
(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
(d) the protection of justified expectations,
(e) the basic policies underlying the particular field of law,
(f) certainty, predictability and uniformity of result, and
(g) ease in determination and application of the law to be applied.
Other factors to be considered and included in the interest analysis in cases such as this are the intent of the parties as to choice of law, the risk to be insured, and the situs of the thing insured. Conflict of Laws: Insurance, supra.
A determination of the correct law to apply in this case will involve the resolution of disputed facts which can only be accomplished after the presentation of evidence by both parties. Factors upon which evidence may be adduced include the intent and understanding of the parties as to the effect of the policy in the various states, reasons for differing coverage in the various states and reasons for differences in the premiums charged in each state. Inquiry may be made into the understanding of the parties as to the different risks involved, the reasons for different coverage in each state and how that coverage was affected by the differences in the law of each state. Inquiry must also be made into the interests served by the application of the law of both Texas and Louisiana. Only after an inquiry is made into all applicable factors at the trial court level can the trial court properly evaluate and determine the correct law applicable to this case. Therefore, because, under the facts of this case, the choice of law to be applied to determine the ultimate issue of the defendant’s duty to defend the Texas lawsuit rests, in part, upon the resolution of disputed issues of fact, the trial court erred in granting this motion for partial summary judgment.
It appears that the choice of law to be applied will affect the ultimate result, that is, whether there existed on the part of the defendant a duty to defend the Texas lawsuit. Because the choice of law is unclear, it cannot be said that plaintiff was entitled to this partial summary judgment as a matter of law. Therefore, on this basis also, the trial court erred in granting plaintiffs motion for partial summary judgment.
Under Louisiana law, the insurer’s obligation to defend suits against its insured is broader than its liability for damage claims. The duty to defend is determined by allegations of the injured plaintiff's petition, with the insurer being obligated to provide a defense unless the petition unambiguously excludes coverage. Meloy v. Conoco, Inc., 504 So.2d 833 (La.1987); American Home Assurance Company v. Czarniecki, 255 La. 251, 230 So.2d 253 (1969); Little v. Kalo Laboratories, Inc., 424 So.2d 1065 (La.App. 2d Cir.1982), writ denied 430 So.2d 79 (La.1983); Guilbeau v. Roger, 443 So.2d 773 (La.App. 3rd Cir.1983), 446 So.2d 1224 (La.1984); Lees v. Smith, 363 So.2d 974 (La.App. 3rd Cir.1978); Levy v. Duclaux, 324 So.2d 1 (La.App. 4th Cir.1975), writs denied 328 So.2d 887, 888 (La.1976).
The present plaintiff argues that the same result would obtain under Texas law. The plaintiff argues that under Texas law, in determining the duty of a liability insurer to defend a lawsuit, allegations of the complaint should be considered in light of the insurance policy provisions without reference to the truth or falsity of the allegation, or to what the parties know or believe the true facts to be and without reference to a legal determination thereof. In consid *1222 ering allegations for the purpose of determining whether a liability insurer is obligated under its policy to defend, a liberal interpretation of those allegations should be indulged. For these propositions plaintiff cites Argonaut Southwest Insurance Company v. Maupin, 500 S.W.2d 633 (Tex. 1973); Texas United Insurance Company v. Burt Ford Enterprises, Inc., 703 S.W.2d 828 (Tex.App. Tyler 1986); Millers Mutual Fire Insurance Company of Texas v. Texoma Directional Drilling Company, Inc., 622 S.W.2d 899 (Tex.App. Fort Worth 1981); City of Beaumont v. Ranger Insurance Company, 505 S.W.2d 934 (Tex.App. Beaumont 1974); Heyden Newport Chemical Corp. v. Southern General Company, 387 S.W.2d 22 (Tex.1965).
However, the defendant contends that under Texas law, if the petition against the insurer alleges only facts excluded from policy coverage (such as wrongful removal of timber across the property lines), or facts which do not meet the policy definition of an “occurrence,” the insured is not required to defend. Fidelity and Guaranty Insurance Underwriters, Inc. v. James Richard McManus, 633 S.W.2d 787 (Tex. 1982); Holmes v. Employers Casualty Company, 699 S.W.2d 339 (Tex.App. Houston 1985).
It appears that under Texas law, the duty to defend is not as broad as under Louisiana law. Another difference between Louisiana and Texas law concerns the interpretation of various terms used in the insurance policy. As was stated earlier, the policy defines an occurrence as an accident, including continuous or repeated exposure to conditions which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured. Intentional acts are excluded from coverage. Under Texas law intentional actions, even when the result is unexpected or unintended, do not constitute accidents or occurrences under the terms of Texas insurance policies. Argonaut Southwest Insurance Company v. Maupin, supra.
Under Louisiana law, to exclude coverage, not only must the act be intended, but also the result or the injury must be intended. Pique v. Saia, 450 So.2d 654 (La.1984); Thibodeaux v. Western World Insurance Company, 391 So.2d 24 (La.App. 3d Cir. 1980).
We do not here attempt to determine what the correct result would be on the substantive issues under Louisiana or Texas law, nor do we engage in an interest analysis to determine which state law is applicable. We hold that the question of choice of law regarding the duty to defend and the attendant interpretation of the insurance policy presents a genuine issue of material fact and prevents a determination that plaintiff is entitled to partial summary judgment as a matter of law. Therefore, the trial court erred in the granting of partial summary judgment in this case under LSA-C.C.P. Art. 966.
CONCLUSION
For the above stated reasons, we reverse the trial court judgment granting the plaintiffs motion for partial summary judgment and remand for further proceedings, consistent with this opinion.
REVERSED AND REMANDED.
HALL, J., concurs in the result.