BOLIN DEVELOPMENT CORPORA-
TION and George Bolin, Appellants,

v.

Ken INDART and Ziea
Tabini, Appellees.

No. C14–89–00927–CV.

Court of Appeals of Texas,
Houston [14th Dist.].

Jan. 24, 1991.

Rehearing Denied Feb. 28, 1991.

Edward J. Hennessy and Randall D. Wilkins, Houston, for appellants.

David W. Holman, Houston, for appellees.

Before PAUL PRESSLER, CANNON and ELLIS, JJ.

OPINION

PAUL PRESSLER, Justice.

The appellees were tenants who sued their landlord for property damages caused by a fire in a rented residence. The trial court awarded them a total of $47,000. The landlord raises nine points of error. We reverse.

Appellees rented a residence from appellant, Bolin Development Corporation, in

July 1981. The property was owned by a trust set up by appellant, George Bolin, for his son. Appellees did not sign a written lease because appellants said it was unnecessary. When appellees moved in, there were approximately twelve fuse boxes in the garage. In the summer of 1982, appellees noticed sparking in a fuse box and in the fall of 1982, appellees experienced a power shortage in the residence. Appellees notified appellants of these problems and appellants employed McDonald Electric Company to remove the old fuse boxes and replace them with two breaker panels. Appellant, Bolin, testified that this was the only electrical problem of which he received notice.

Appellees testified about other incidents of electrical problems. In January 1983, appellees experienced a power outage in the living room, kitchen, and master bedroom. At the time of this outage, appellees were having a party and had four television sets on. Appellees testified that they advised appellants of this problem and that appellants promised to send an electrician, but no electrician came. Appellees further testified to subsequent outages, including one in August 1983, three days before the fire occurred. Appellees testified that they notified appellants, who promised to send an electrician. The fire occurred on August 25, 1983. Appellees sued appellants for negligence and breach of an implied warranty of habitability.

Two experts testified about the origin and the probable cause of the fire. Both experts agreed that the fire originated at or near the breaker panel. Appellees' expert testified that the fire probably originated in the panel or in the "raceway" underneath the panel. He further testified that the probable cause of the fire was a short circuit, which may have occurred just moments before the fire. This expert found no evidence tying the prior power outages or the breaker panel installation to the fire. Furthermore, he doubted that an electrician could have discovered a problem or prevented the fire unless he was present when the short circuit occurred.

Appellants' expert testified that the fire probably began in the raceway below the breaker panels and that the probable cause of the fire was a power surge or dielectric failure, which is a breakdown in the insulation in the wireway. This expert added that a problem with the insulation or a short circuit would not be visible because it is enclosed in a metal box which only Houston Lighting & Power Company may enter. He agreed that an overload of power can trip a circuit breaker, but the power should return when the breaker is flipped on. This expert added that if flipping the breaker does not restore power, there may be a problem with the particular appliance, with the breaker, or with the wiring.

The jury found the residence uninhabitable on the day of the fire, that the electrical system at the residence was defective, that appellants knew or should have known of this defect, and that this defective condition was the proximate cause of the fire. Although the jury found appellants negligent, they found that this negligence was not a proximate cause of the occurrence. The jury awarded appellee, Indart, $40,000 and awarded appellee, Tabini, $7,000 for damage to their personal property. The trial court rendered judgment on the verdict and awarded both pre-judgment and post-judgment interest.

In point of error one, appellants claim that under Texas law a landlord can be held liable for property damages only if they are proximately caused by the negligence of the landlord. Appellants also argue that statutory duties and remedies provided in the Property Code abrogate the common law implied warranty of habitability created by *Kamarath v. Bennett*, 568 S.W.2d 658 (Tex.1978). The implied warranty recognized in *Kamarath* created a duty on the part of the landlord to keep the rented premises habitable and fit for living. *Kamarath*, 568 S.W.2d at 661.

At the time of the fire, the date the cause of action accrued, rights and duties of landlords and tenants were governed by TEX. REV.CIV.STAT.ANN. art. 5236f. Section 14 of art. 5236f provided:

The duties of the landlord and remedies of the tenant as set forth in this Act shall apply in lieu of existing common law and statutory law regarding the landlord's warranties or duties of maintenance, repair, security, habitability, and nonretaliation, and the tenant's remedies for violation thereof. Otherwise, nothing in this Act shall serve to affect or diminish any other rights of the landlord or tenant under contract, statute, or common law which are consistent with the purposes of this Act or any right the landlord or tenant may have to bring actions for personal injury or property damage under the laws of this state.

Act of May 28, 1979, 66th Leg., R.S., ch. 780, 1979 Tex.Gen.Laws 1978, 1983 (repealed 1983 and codified at TEX.PROP.CODE ANN. § 92.061 (Vernon 1984) current version at TEX.PROP.CODE ANN. § 92.061 (Vernon Supp.1991)). This statute was enacted the year after *Kamarath* was decided and abrogated the *Kamarath* implied warranty. *See Waldon v. Williams,* 760 S.W.2d 833, 834 (Tex.App.—Austin 1988, no writ); *Garza–Vale v. Kwiecien,* 796 S.W.2d 500, 502–03 (Tex.App.—San Antonio 1990, writ denied). The first sentence of this section expressly states that the landlord's statutory duty to repair and the tenant's statutory remedies are in lieu of the common law remedy for breach of the implied warranty of habitability. *See Waldon,* 760 S.W.2d at 834.

The second sentence of § 14 expressly provides that nothing in the statute affects a tenant's right to bring a cause of action for personal injury or property damage. Appellants contend that this sentence does not mean that tenants may recover property damages for breach of the implied warranty of habitability set forth in *Kamarath.* Rather, appellants argue that this sentence simply recognizes a tenant's right to seek personal injury or property damages under a negligence theory. Appellees, on the other hand, argue that neither art. 5236f nor the current section in the Property Code preempts causes of action for personal injury or property damage under the implied warranty of habitability of *Kamarath.* Thus, the issue presented is whether the statute precludes a tenant from recovering property damages under the implied warranty of habitability theory recognized in *Kamarath.*

Prior to *Kamarath,* a tenant received only a bare right of possession in return for his promise to pay rent. *See Kamarath,* 568 S.W.2d at 660. Unless the landlord expressly promised to keep the leased premises in repair, the landlord had no obligation to repair. *Morton v. Burton–Lingo Co.,* 136 Tex. 263, 150 S.W.2d 239, 241 (1941). *Kamarath,* however, recognized that the object of a dwelling lease is to furnish the tenant premises suitable for living purposes. *Kamarath,* 568 S.W.2d at 661. Thus, *Kamarath* held that a landlord impliedly promises to keep the leased premises in a habitable condition. *Id.* Although *Kamarath* did not address the proper measure of damages for breach of this promise, the court noted that evidence about the difference between the rent charged and the fair market rental of the premises in its state of disrepair was relevant. *Id.* at 659 n. 1.

When this warranty became a matter of statutory law, the Legislature provided for tenant remedies of (1) partial rent reduction, (2) a civil penalty against the landlord of one month's rent plus $100, and (3) actual damages. Act of May 28, 1979, 66th Leg., R.S., ch. 780, 1979 Tex.Gen.Laws 1978, 1983 (repealed 1983 and codified at TEX.PROP.CODE ANN. § 92.061 (Vernon 1984) current version at TEX.PROP.CODE ANN. § 92.061 (Vernon Supp.1991)). The Legislature did not define "actual damages," but case law has defined this as the difference between the contract rental and the rental value of the premises in disrepair. *See Waldon v. Williams,* 760 S.W.2d 833, 835 (Tex.App.—Austin 1988, no writ).

Even in those states where the common law, rather than statutory law, provides for actions for breach of a warranty of habitability, no majority rule has emerged regarding whether property damages are recoverable in an action for breach of this warranty. *See George Washington Univ. v. Weintraub,* 458 A.2d 43, 48–49 (D.C.App. 1983) (holding that a landlord may be liable

for breaching the duty to use reasonable care in maintaining rented premises in compliance with the housing code if the landlord had actual or constructive notice of the defective condition that caused the tenant's losses); *Proffer v. Randall*, 755 S.W.2d 655, 657 (Mo.App.1988) (holding that, although landlord liability for breach of the implied warranty of habitability requires actual or constructive notice of the defective condition, tenant may recover only "the difference between the agreed rent and the fair rental value of the premises as they were during occupancy by the tenant in the unhealthful or unsafe condition," and may not recover for damage to her personal property).

Although no Texas cases address this precise issue, two cases address the viability of such a cause of action where the tenant seeks damages for personal injury. In a case decided the same day as *Kamarath*, a panel of this court held that a warranty of habitability by the landlord does not apply in a tenant's suit for personal injuries. *Morris v. Kaylor Eng'g Co.*, 565 S.W.2d 334, 334 (Tex.Civ.App.—Houston [14th Dist.] 1978, writ ref'd n.r.e.). The supreme court refused an application for writ of error in this case after its decision in *Kamarath*. The clear implication of the court's refusal of the application for writ of error in *Morris* is that the warranty of habitability does not extend to actions for personal injuries.

■ In the more recent case of *Porter v. Lumbermen's Inv. Corp.*, 606 S.W.2d 715, 717 (Tex.Civ.App.—Austin 1980, no writ), the court held that a tenant may not recover damages for personal injury under the implied warranty of habitability. In so holding, the court stated:

> The warranty of habitability recognized in *Kamarath* does not apply to the landlord-tenant relationship in a personal injury case. Any cause of action against the landlord in such cases must arise under some theory of negligence.

*Id.* (citations omitted). Thus, Texas law does not permit tenants to seek damages for personal injury under a breach of warranty of habitability theory.

■ To permit appellants in the instant case to recover property damages for breach of an implied warranty under *Kamarath* would conflict with those cases holding that the warranty was abrogated by statute and thus, would create inconsistent remedies for tenants seeking property damage and for those seeking damages for personal injury. Furthermore, denial of a common law action for breach of the warranty of habitability does not leave tenants without a remedy. As in *Morris* and *Porter*, tenants seeking property damages may bring a negligence cause of action against the landlord. Accordingly, no action for breach of the common law implied warranty of habitability exists for recovery of property damages. Appellants' first point of error is sustained.

Appellees here did not allege a violation of the statutory duty to repair but instead alleged a breach of the common law implied warranty of habitability which has been abrogated by statute. Thus, there is no need to address the question of whether appellees met the statutory requirements for a finding of liability for breach of the duty to repair.

Appellees did, however, allege negligence. The jury found appellants negligent, but that this negligence was not a proximate cause of the occurrence. Appellants argue in their second point of error that the trial court erred in rendering judgment for appellees where the jury found no proximate cause. By cross-point, appellees contend that there is insufficient evidence to support the jury's finding on proximate cause.

■ When faced with a factual sufficiency challenge, an appellate court must weigh all of the evidence and set aside the verdict "only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust." *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex.1986). Here, appellees testified that they made numerous complaints about electrical problems, but that appellants sent an electrician only once, and that was in response to their first complaint. Appellant, George Bolin, admitted that he sent an electrician only

once but stated that he received only one complaint. The subsequent complaints allegedly made were regarding power outages.

Appellees' expert testified that he found no evidence tying these outages to the fire. Furthermore, he testified that an electrician probably could not have corrected the problem because the cause of the fire was a short circuit. Appellees' expert stated that prevention of the fire would have necessitated the electrician's presence when the short circuit occurred. Appellants' expert testified that power outages could signify a problem in the appliance, in the wiring, or in the breaker. He further testified that a breakdown in the wireway insulation probably caused the fire.

■■■ The trier of fact is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *Rego Co. v. Brannon*, 682 S.W.2d 677, 680 (Tex. App.—Houston [1st Dist.] 1984, writ ref'd n.r.e.). An appellate court may not substitute its opinion for that of the trier of fact merely because it might have reached a different conclusion. *Herbert v. Herbert*, 754 S.W.2d 141, 144 (Tex.1988). By finding appellants negligent, the jury apparently concluded that appellants had notice of an electrical problem and that appellants breached their duty to correct it. By finding that this inaction on the part of the landlord was not the proximate cause of the fire, the jury must have believed the testimony of appellees' expert that the outages were not necessarily related to the cause of the fire and that the defect causing the fire was probably not discoverable on inspection. This finding is not so against the great weight and preponderance of the evidence as to be clearly wrong or unjust. *See Cain*, 709 S.W.2d at 176. Appellees' cross-point is overruled. Appellants' second point of error is sustained.

The judgment of the trial court is reversed and judgment is rendered in favor of appellants.

ELLIS, Justice, dissenting.

Finding myself in disagreement with the majority members of the panel, I record my respectful dissent. I would grant appellee's cross-point and affirm the District Court's judgment.

In their cross-point, appellees contend that there is insufficient evidence to support the jury's finding on proximate cause.

As the final arbiter of questions of fact, this Court is empowered to review the legal and factual sufficiency of both affirmative jury findings and negative jury findings. *See Cropper v. Caterpillar Tractor Co.*, 754 S.W.2d 646, 649–52 (Tex.1988); *Herbert v. Herbert*, 754 S.W.2d 141, 145 (Tex. 1988).

The jury found that: (1) there was a defective condition in the electrical system at 4049 Overbrook; (2) that Bolin knew, or should have known, in the exercise of ordinary care, of that defective condition in the electrical system; and (3) that Bolin's failure to correct that defective condition was negligent. However, the jury answered "No" when asked whether the negligence was a proximate cause of the occurrence in question.

Long before the existence of the common law implied warranty of habitability, there existed in Texas a tort duty on the landlord to repair after notice of a defective condition. *Harvey v. Seale*, 362 S.W.2d 310, 312 (Tex.1962); *Stool v. J.C. Penney Co.*, 404 F.2d 562, 569 (5th Cir.1968) (applying Texas law). "The tort duty arises from lessors' ability to make repairs and his control over them, and it is not necessary for the plaintiff to establish that the covenant to repair was made for the purpose of preventing personal injury...." *Harvey*, 362 S.W.2d at 312.

Here, the evidence revealed that the landlord, Bolin, had knowledge, through numerous complaints, of a defective condition in the electrical system at the tenant's dwelling. Further, Bolin's control over the repairs was established. Mr. Bolin admitted that the ultimate decision on whatever repairs needed to be performed fell on him. So long as the landlord's negligent failure to repair is a "substantial factor" in causing the occurrence, proximate cause is established. *See Gannett Outdoor Co. of*

*Texas v. Kubeczka*, 710 S.W.2d 79, 85–86 (1986). The jury was not free to disregard the evidence of proximate cause merely because Bolin did not foresee that his omissions would lead to the type of harm that occurred. *Id.* at 88.

The evidence was clear that Bolin's negligence was a substantial factor in causing the occurrence. But for a licensed electrician, the licensed electrician that the tenants pleaded for and that Bolin promised, the electrical problems could have been identified and corrected. Bolin admitted that if there were a defective condition in the electrical system, it could cause a fire and he should do all in his power to eliminate that condition. Although it may be reasonable for a landlord to rely on a licensed electrician to do the work, it is not reasonable for a landlord to rely on a licensed electrician to correct a defect, if the licensed electrician does not appear.

Therefore, the jury finding of no proximate cause was so against the great weight of the evidence as to be manifestly wrong and unjust. Accordingly, I would affirm the District Court's judgment.